42 F.3d 1401
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ROSENDIN ELECTRIC, INC., Plaintiff,
v.
UNITED PACIFIC INSURANCE COMPANY,
Defendant-third-party-plaintiff-appellee,
v.
J.A. JONES CONSTRUCTION COMPANY, a North Carolina
Corporation, Third-party-defendant-appellant.
ROSENDIN ELECTRIC, INC., Plaintiff,
v.
UNITED PACIFIC INSURANCE COMPANY,
Defendant-third-party-plaintiff-appellant,
v.
J.A. JONES CONSTRUCTION COMPANY, a North Carolina
Corporation; Aetna Casualty & Surety Company, a
Connecticut Corporation,
Third-party-defendants-appellees.
 Nos. 93-15622, 93-16154.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 15, 1994.
Decided Nov. 14, 1994.
 
 1
 Before: POOLE and NOONAN, Circuit Judges, and HAGEN, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 J.A. Jones Construction Company appeals the district court's order (1) enforcing a settlement agreement between Jones and United Pacific Insurance Company, (2) awarding attorney's fees and interest to United Pacific, (3) holding that by settling with United Pacific, Jones waived its right to appeal the award of attorney's fees and interest, (4) awarding postjudgment interest, and (5) sanctioning Jones. United Pacific cross-appeals the district court's dismissal of its payment bond claim against Jones and Aetna Casualty and Surety Company, Jones's surety, and the resulting award of attorney's fees to Jones.
 
 
 4
 We affirm in part and reverse in part.
 
 
 5
 * This diversity action arises from the construction of Pelican Bay Prison by J.A. Jones Construction Company. Jones, the general contractor, subcontracted with Whitt Electrical to perform the electrical work. In 1989, Whitt defaulted, and United Pacific Insurance Company, Whitt's surety, contracted with Rosendin Electric to complete the electrical work.
 
 
 6
 In late 1989, payment disputes arose between Rosendin and United Pacific, and United Pacific and Jones. In December 1989, Rosendin, a California corporation, sued United Pacific, a Washington corporation, in federal district court. United Pacific filed a third-party complaint against Jones, a New Jersey Corporation, and Jones's surety for the prison project, Aetna Casualty, a North Carolina corporation with its principal place of business in Connecticut. United Pacific sued under Aetna's bond guaranteeing Jones's work, but the district court dismissed the claim under Federal Rule of Civil Procedure 12(b)(6) on the ground that United Pacific was not among the class of claimants intended to benefit from the payment bond.
 
 
 7
 Jones and United Pacific settled their dispute in November 1991. Under the settlement agreement, (1) United Pacific agreed to release liens it had filed in return for Jones's payment of $905,000 in withheld payments, (2) Jones and United Pacific agreed to arbitrate $504,000 being held by Jones as "backcharges" for Whitt's and Rosendin's alleged defective work, and (3) Jones and United Pacific agreed that they would file cross-motions regarding entitlement to attorney's fees and interest and, if the district court declined to address the motions, submit the issues to binding arbitration.
 
 
 8
 On November 12, 1991, Jones paid United Pacific the $905,000. In September 1992, the arbitrator determined that Jones was entitled to $239,000 in backcharges and that United Pacific thus was entitled only to $265,000 of the $504,000 it was seeking from Jones.
 
 
 9
 Jones and United Pacific each filed motions in district court regarding attorney's fees, and United Pacific also requested interest on the $905,000 payment and the $265,000 arbitration award. The matter was referred to a special master pursuant to Fed.R.Civ.P. 53 by order of the court and stipulation of the parties.
 
 
 10
 The special master awarded statutory fees of $30,750 to Jones for having obtained a dismissal of United Pacific's payment bond claim. He also awarded to United Pacific (1) $140,000 in contractual attorney's fees and costs, (2) 10% prejudgment interest on the $905,000 settlement from February 1990 to November 1991, and (3) 24% annual interest on the $265,000 arbitration award because Jones did not pay the award promptly.
 
 
 11
 In January 1993, Jones requested the district court to enter judgment confirming the arbitration award and the special master's orders so that Jones could appeal. United Pacific moved to enforce the settlement agreement, for a ruling that Jones had waived its right to appeal by entering into the settlement agreement, and for sanctions.
 
 
 12
 Following a February 25, 1993 hearing, the district court ruled that Jones had waived its right to appeal, stating that the parties had understood that "everyone agreed to go to Judge Kroninger [the special master] to try to work this out as a full, final, complete disposition of this matter" and that "[i]t was not intended by any stretch of the imagination in anyone's mind that this was a first step in trying to resolve this dispute." The district court ordered Jones to pay $609,631.87 (the total owed by Jones to United Pacific as of that date), plus daily interest of $265.14 (using an annual rate of 24% on the arbitration award and 10% on the balance), plus sanctions in the amount of $2,175 for having opposed United Pacific's motion.
 
 
 13
 Judgment was entered on March 4, 1993, Jones timely appealed on April 2, 1993, and United Pacific timely cross-appealed on April 12, 1993 the dismissal of its payment bond claim against Jones and Aetna under Aetna's bond guaranteeing Jones's work (and the resulting $30,750 in attorney's fees awarded to Jones for prevailing on its motion to dismiss).
 
 II
 
 14
 The district court's interpretation of the settlement agreement is a legal determination that is reviewed de novo. United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir.), cert. denied, 113 S.Ct. 660 (1992); Jeff D. v. Andrus, 899 F.2d 752, 759 (9th Cir.1989). The district court's resolution of disputed facts is reviewed for clear error. United Commercial, 962 F.2d at 856.
 
 
 15
 The district court's imposition of sanctions is reviewed for an abuse of discretion. Beaudry Motor Co. v. Abko Properties, Inc., 780 F.2d 751, 756 (9th Cir.), cert. denied, 479 U.S. 825 (1986). In its imposition of sanctions, the district court's factual finding of bad faith is reviewed for clear error. Id.
 
 
 16
 The district court's Rule 12(b)(6) dismissal of United Pacific's payment bond claim is reviewed de novo. First Am. Title Ins. Co. v. United States, 848 F.2d 969, 970 (9th Cir.1988).
 
 III
 
 17
 Jones contends that the district court erred by holding that by settling with United Pacific, Jones waived its right to appeal the special master's award of attorney's fees and interest to United Pacific.
 
 
 18
 Under California law,[1] settlement agreements are governed by general principles of contract law. Adams v. Johns-Manville Corp., 876 F.2d 702, 704 (9th Cir.1989). Contracts are to be read as a whole. Cal.Civil Code Sec. 1641. A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. Cal.Civil Code Sec. 1647. Moreover, where a contract is ambiguous, a court may consider the subsequent conduct of the parties to show their intent in entering into the contract. Tanner v. Title Ins. & Trust Co., 129 P.2d 383, 388 (Cal.1942); Western Medical Enter., Inc. v. Albers, 212 Cal.Rptr. 434, 439 (Cal.App.1985). Nonetheless, a contract extends only to those matters about which the parties intended to contract. Cal.Civ.Code Sec. 1648.
 
 
 19
 Under the settlement agreement, the parties agreed to file motions regarding their entitlement to attorney's fees and interest in the district court, or, if the district court declined to hear their motions, to submit the issues for binding arbitration. The settlement agreement did not mention Jones's appeal rights. The only mention of appeal rights is the following sentence: "United Pacific does not by this Settlement Agreement waive its right of appeal regarding the dismissal of its Project payment bond." The settlement agreement also states that "the parties agree to file a stipulated dismissal consistent with this Settlement Agreement in the Federal action."
 
 
 20
 The settlement agreement, read as a whole, suggests that the parties' intent was to end the action after the district court decided the attorney's fees and interest issues. The parties submitted their main dispute regarding Jones's withholding of funds to binding arbitration. They agreed to file cross-motions regarding their entitlement to attorney's fees and interest disputes to the district court or, if the district court declined to hear their motions, to submit their dispute to binding arbitration. This procedure, together with the agreement to file a stipulated dismissal, suggests that the parties intended submission of their dispute to the district court to operate like binding arbitration and thus intended that the district court proceedings would resolve the dispute (and that no appeal would be made).
 
 
 21
 The parties' intent that no appeal would be taken by Jones also is shown by United Pacific's reservation of its right to appeal. If Jones had intended to retain its right to appeal, it should have done the same thing.
 
 
 22
 This interpretation of the parties' intent is confirmed by the parties' subsequent actions in filing a joint status conference statement in September 1992. See Tanner, 129 P.2d at 388 (when contract is ambiguous, subsequent conduct admissible to show intent). The parties characterized their dispute as once-complicated and now "minor", and informed the court that they would dismiss the case with prejudice following receipt of the arbitration award and the special master's decision. They told the court that "[a]ll that is necessary is for the Court to retain jurisdiction until ... the arbitration [is finished] ... [and until] United Pacific and Jones conclude their hearing in front of Judge Kroninger [the special master]." A reasonable conclusion, and the conclusion reached by the district court, is that the parties intended that the district court proceedings resolve their dispute regarding fees and costs and that no appeal would be taken.
 
 
 23
 This finding of fact regarding the parties' intent is not clearly erroneous. Accordingly, we affirm the district court's determination that Jones waived its right to appeal.
 
 IV
 
 24
 Jones may, however, appeal Judge Vukasin's omission of Jones's $30,750 award, Judge Vukasin's use of 24% and 10% rates to award postjudgment interest, and Judge Vukasin's imposition of sanctions. See Jeff D., 899 F.2d at 765 (awarding attorney's fees on appeal because the issues on appeal were separate from the settlement of the underlying litigation and because the waiver of attorney's fees in the settlement agreement did not affect the disposition on appeal).
 
 A. Omission of $30,750 Award
 
 25
 Jones contends that Judge Vukasin erred when he omitted the $30,750 attorney's fee award to Jones in his final order.
 
 
 26
 Judge Kroninger, sitting as special master pursuant to a district court order and the parties' stipulation, awarded statutory attorney's fees of $30,750 to Jones under California Civil Code Sec. 3250 for having obtained a dismissal of United Pacific's payment bond claim against Jones and Aetna. Judge Vukasin did not reduce United Pacific's total award of $609,631.87 by this amount. Jones objected, but United Pacific argued, and the district court agreed, that because United Pacific planned to appeal the $30,750 award, the $609,631 should not be reduced.
 
 
 27
 Jones's argument--that the district court erred by omitting Jones's fee award--has merit. United Pacific's plan to appeal the award is not grounds to exclude the award. The district court's error would be harmless if the district court improperly dismissed United Pacific's payment bond claim against Aetna and Jones. Because we hold that the district court did not err by dismissing United Pacific's claim, see infra, the error is not harmless, and on remand, Jones's obligation to United Pacific should be reduced by $30,750.
 
 B. Postjudgment Interest
 
 28
 Jones contends that the district court erred by calculating postjudgment interest on United Pacific's award of $609,631.87 based on annual rates of 24% on the arbitration award and 10% on the balance.[2]
 
 
 29
 On the date the district court confirmed the attorney's fees and interest award to United Pacific, the total Jones owed to United Pacific was $609,631.87. United Pacific requested, and the district court granted, daily postjudgment interest of $265.14, $177.15 daily (or 24% annually) on the arbitration award, and $87.97 daily (or 10% annually) on the balance. These rates were the rates under state law used by Judge Kroninger to impose prejudgment interest.
 
 
 30
 Jones argues that the district court should have imposed interest under 28 U.S.C. Sec. 1961, which provides for interest on a money judgment in a civil case at an amount equal to the treasury bill rate effective at the auction held immediately prior to judgment. At the date of the district court's hearing, this rate was 3.45%. United Pacific responds conclusorily that (1) section 1961 applies only to judgments, not to injunctions specifically enforcing settlement agreements, and (2) the parties can agree to a different rate, which they did here by agreeing to submit the motion for interest to the district court for determination.
 
 
 31
 In diversity actions, state law determines the rate of prejudgment interest, and federal law determines the rate of postjudgment interest. James B. Lansing Sound, Inc. v. National Union Fire Ins., 801 F.2d 1560, 1569-60 (9th Cir.1986), amended, 981 F.2d 1549 (9th Cir.1992).
 
 
 32
 United Pacific cites no support, nor could we find any, for its argument that the judgment in this case is not a "judgment" under section 1961. Under the plain language of section 1961, interest "shall be allowed on any money judgment in a civil case recovered in a district court." The judgment here is a money judgment in a civil case recovered in a district court, and thus section 1961 applies.
 
 
 33
 United Pacific's second argument--that the parties agreed to a different rate by submitting their interest dispute to the district court--also fails. Under the settlement agreement, Jones agreed to pay United Pacific $905,000 in money it previously withheld, and the parties agreed to arbitrate whether United Pacific was entitled to all or part of an additional $504,000 withheld by Jones. They then would submit cross-motions regarding attorney's fees and interest. The logical interpretation of the agreement is that the district court would decide what prejudgment interest should be awarded on the money received by United Pacific, not what postjudgment interest should be awarded.
 
 
 34
 In sum, Jones's argument has merit, and we remand for calculation of postjudgment interest under section 1961.
 
 C. Sanctions
 
 35
 The district court sanctioned Jones $2,175 pursuant to 28 U.S.C. Sec. 1927 for attempting to appeal the arbitration award and the special master's award of attorney's fees and interest. $2,175 was the amount United Pacific spent bringing its motion. Jones argues that imposition of sanctions was improper.
 
 
 36
 Under section 1927, "[a]n attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."
 
 
 37
 The record suggests that Jones was unhappy with the arbitrator's and the special master's decisions and pursued its challenges despite the parties' intent that everything be settled by binding arbitration and by the district court. The district court did not abuse its discretion by imposing sanctions. See Beaudry Motor Corp., 780 F.2d at 756.
 
 V
 
 38
 United Pacific contends that the district court erred by dismissing its claim against Jones and Aetna Casualty, which issued a payment bond guaranteeing Jones's work. United Pacific argues that Jones owes it money and that it is entitled to recover this money under the payment bond because it is an equitable assignee of Whitt, the defaulting subcontractor. The district court dismissed the claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that United Pacific was not in the class of beneficiaries that can recover under the payment bond.
 
 
 39
 Dismissal for failure to state a claim is appropriate only if the plaintiff "can prove no set of facts which would entitle him to relief." Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir.1986), cert. denied, 479 U.S. 1054 (1987). The allegations in the complaint are taken as true and are construed in the light most favorable to the nonmoving party. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989).
 
 
 40
 Aetna issued a payment bond guaranteeing Jones's work as general contractor. The bond provided that it secured "the payment of claims of laborers, mechanics, materialmen, and other persons as provided by law" and that "[t]his bond shall inure to the benefit of the persons named in Civil Code Section 3181 as to give a right of action to such persons or their assigns in any suit brought upon this bond."
 
 
 41
 United Pacific was the surety for Whitt, the defaulting electrical subcontractor. After Whitt defaulted, United Pacific stepped in under its performance bond and took over the completion of the work by hiring Rosendin. Whitt assigned its rights and obligations under the subcontract to United Pacific. United Pacific and Jones signed a Takeover Agreement under which Jones agreed to pay United Pacific the amount due under the Whitt subcontract. United Pacific contracted with Rosendin to pay this amount plus a premium.
 
 
 42
 In its complaint, United Pacific claimed that Jones owed United Pacific an amount "in excess of $1,800,000 for the reasonable value of labor and material sold and delivered to Jones [for the Whitt subcontract] ... at Jones' insistence and request." United Pacific sued Jones and Aetna for this amount under the Aetna payment bond guaranteeing Jones's work. The district court dismissed the claim on the ground that United Pacific was not in the class of beneficiaries named in the payment bond: persons listed in California Civil Code Sec. 3181.
 
 
 43
 California Civil Code Sec. 3181 sets forth who may serve stop notices upon a public entity in public works projects. These persons include contractors, materialmen, subcontractors, lessors of equipment, and laborers. Cal.Civil Code Secs. 3181, 3110, 3111, 3112. Sureties are not listed, but United Pacific argues that as an assignee of the Whitt subcontract, it stood in Whitt's shoes and could file a claim under the Aetna payment bond.
 
 
 44
 The subcontract between Jones and Whitt, however, required Jones's prior written consent for any assignment. See Thomas v. Thomas, 13 Cal.Rptr. 872, 877 (Cal.App.1961) (assignments may be restricted by contract). The district court gave United Pacific an opportunity to amend its complaint to show that it received written consent from Jones. United Pacific did not show written consent.
 
 
 45
 Instead, United Pacific argued a theory of equitable assignment. United argues that a surety that satisfies his principal's obligations is entitled to be subrogated to the rights of the principal (Whitt) against the creditor (Jones). This right of equitable subrogation, United argues, is the equivalent of an equitable assignment under California law.
 
 
 46
 None of the cases cited by United Pacific involves a surety (as surety) suing on a contractor's payment bond. Aetna's payment bond is clear: the beneficiaries are those listed in California Civil Code Sec. 3181 and their assignees. Sureties are not listed; persons such as materialmen and subcontractors are. If United Pacific had obtained written consent from Jones for the assignment, then it could have sued under Aetna's payment bond as the assignee of a subcontractor. It did not obtain consent, however, and the district court did not err by dismissing United Pacific's claim.
 
 
 47
 United Pacific also argues that Jones waived any objections to the assignment by accepting United Pacific's performance. Under its payment bonds, however, United Pacific guaranteed Whitt's work and was required to ensure completion of work once Whitt defaulted. Jones accepted only United Pacific's performance as a surety, not as an assignee.
 
 VII
 
 48
 On appeal, United Pacific states that it is seeking attorney's fees and double costs pursuant to Fed.R.App.P. 38.
 
 
 49
 This court has discretion to impose damages against litigants as a sanction for bringing a frivolous appeal. Fed.R.App.P. 38; Wilcox v. Commissioner, 848 F.2d 1007, 1008-09 (9th Cir.1988). "An appeal is frivolous if the result is obvious, or the arguments of error are wholly without merit." Wilcox, 848 F.2d at 1009 (citation omitted).
 
 
 50
 Because at least part of Jones's appeal has merit, we exercise our discretion and decline to impose sanctions.
 
 
 51
 AFFIRMED in part, REVERSED AND REMANDED in part.
 
 
 
 *
 The Honorable David Warner Hagen, United States District Judge for the District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The settlement agreement provides that it is to be "construed according to the laws of the State of California."
 
 
 [2]
 Jones does not contest the award of postjudgment interest but challenges only the rate used