**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PETER SZANTO,<br>　　　　　Debtor. | BAP No. OR-21-1069-FBS<br><br>Bk. No. 3:16-bk-33185-pcm7 |
| PETER SZANTO,<br>　　　　　Appellant,<br>v.<br>DANITZA HON; DANNY ONG;<br>CLAUDIA CHAN; YAM WERN-JHIEN;<br>RAJAN & TANN SINGAPORE LLP,<br>　　　　　Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Oregon
Peter C. McKittrick, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Peter Szanto challenges the bankruptcy court's

order denying his motion to hold the chapter 7 trustee's Singapore-based

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

special counsel in contempt of court. He says that they violated Singaporean law and unlawfully practiced law in Oregon.

Mr. Szanto's arguments are frivolous. We AFFIRM.

## FACTS

The bankruptcy court ordered Mr. Szanto not to transfer any property of the estate. He violated this order by transferring hundreds of thousands of dollars to foreign bank accounts held by HSBC Bank Australia Ltd. and HSBC Bank Singapore Ltd. The bankruptcy court held Mr. Szanto in contempt of court and directed him to cooperate with the chapter 7 trustee regarding turnover of his estate's assets.

The bankruptcy court approved the trustee's application to employ the Singapore-based law firm of Rajah & Tann Singapore LLP and its attorneys Danny Ong, Yam Wern-Jhien, and Danitza Hon (collectively, "Singapore Counsel") to "[p]repare any and all documents necessary to domesticate and/or register the court's [contempt] order in Singapore for turnover of records and any and all funds constituting property of the bankruptcy estate held by HSBC Singapore Bank [sic]." Mr. Szanto's efforts to vacate the employment order were unsuccessful.[2]

The trustee sought interim compensation for Singapore Counsel. In response, Mr. Szanto filed a motion ("Contempt Motion") requesting that the bankruptcy court hold Singapore Counsel in contempt under § 105(a)

---

[2] Meanwhile, the bankruptcy court denied Mr. Szanto his discharge pursuant to §§ 727(a)(2), (4), and (6). We affirmed, and Mr. Szanto has appealed to the Ninth Circuit.

and award him $1 million for physical and mental anguish. He argued that Singapore Counsel violated Singaporean law by unlawfully attempting to domesticate the bankruptcy court's order. He further alleged that they violated "Anglo Saxon Common Law" because they did not serve him with any document. Finally, he argued that Singapore Counsel unlawfully practiced law in the state of Oregon.

The bankruptcy court issued an order ("Contempt Order") denying Mr. Szanto's motion for "at least" four reasons: (1) civil contempt was inapplicable because Mr. Szanto had not identified any bankruptcy court order that Singapore Counsel had violated; (2) the arguments against Singapore Counsel's compensation should be raised in opposition to the trustee's pending application for compensation, not in a motion for contempt; (3) the bankruptcy court had no authority to review allegations of Singapore Counsel's impropriety in the Singapore high court proceedings; and (4) Singapore Counsel were not engaged in the unauthorized practice of law in Oregon.

Mr. Szanto timely appealed the Contempt Order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158 to hear an appeal from the Contempt Order. *See Humphreys v. EMC Mortg. Corp. (In re Mack)*, BAP Nos. CC-06-1123-MoDK, CC-06-1242-MoDK, 2007 WL 7545163, at *3 (9th Cir. BAP Mar. 28, 2007) ("[W]here a contempt order disposes of the

3

only matter before the court, the order is appealable as a final judgment.").

## ISSUE

Whether the bankruptcy court abused its discretion in denying the Contempt Motion.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's decision whether to hold a party in civil contempt. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    Mr. Szanto's opening brief completely ignores the order on appeal.**

Mr. Szanto's opening brief has nothing to do with the Contempt Order. His failure to raise any relevant argument in his opening brief is an independently sufficient ground to affirm. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."); *Wilcox v. Comm'r of Internal Rev.*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988) (applying rule to pro se appellant).

4

Instead, the arguments in the opening brief relate to Mr. Szanto's appeal from a different order. He says that the document that he chose to call his opening brief was not really a complete opening brief in this appeal, but rather was a "supplemental document" that he offered to inform this Panel of the background of his grievances. This argument makes no sense: if it is correct, Mr. Szanto has never filed an opening brief in this appeal; and it does not explain why he called the supposed "supplemental document" his opening brief.

Mr. Szanto raised arguments relevant to this appeal for the first time in his reply brief. This deprived Singapore Counsel of the opportunity to respond. Because he failed to raise those arguments in his opening brief, he has waived them.

## B. The bankruptcy court did not err in denying the Contempt Motion.

Even if we were to consider the arguments raised in the reply brief, we would affirm. None of Mr. Szanto's arguments comes close to demonstrating reversible error.

To prevail on his Contempt Motion, Mr. Szanto had the burden of showing that Singapore Counsel violated a specific and definite order of the bankruptcy court. "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated **a specific and definite order of the court**." *In re Dyer*, 322 F.3d at 1190-91 (citation omitted) (emphasis added).

5

Ignoring binding Ninth Circuit precedent, Mr. Szanto wrongly argues that civil contempt does not require that a party violate a court order. Rather, he contends that courts sometimes cite lawyers and parties for contempt based on improper behavior in court. His only authority is a supposed Black's Law Dictionary definition of contempt as "willful disregard of a public authority."[3] But this argument ignores the crucial distinction "between contempts that occur in a court's presence (direct contempts) and those that occur outside the courtroom (indirect contempts)." *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1138 (9th Cir. 2001). "[D]irect contempts in the presence of the court traditionally have been subject to summary adjudication, to maintain order in the courtroom and the integrity of the trial process in the face of an actual obstruction of justice." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 832 (1994) (cleaned up). The conduct of which Mr. Szanto complains did not occur in the bankruptcy court's presence. The bankruptcy court could not sanction Singapore Counsel for alleged acts that were not committed in the court's presence and where they did not violate a specific and definite order of the court.

The only order on which Mr. Szanto relies is the order authorizing

---

[3] While Black's Law Dictionary defines contempt in general as "conduct that defies the authority or dignity of a court or legislature," it defines "civil contempt" as "[t]he failure to obey a court order that was issued for another party's benefit." *Contempt*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, if anything, Mr. Szanto's reliance on Black's Law Dictionary supports the Contempt Order.

the trustee to retain Singapore Counsel. He argues that Singapore Counsel disobeyed the employment order by violating Singaporean law and "Anglo Saxon Common Law." This argument suffers from two fatal flaws. First, contrary to Mr. Szanto's arguments, Singapore Counsel did not violate any applicable law. As far as we can tell from the limited record, the Singapore court largely ruled in favor of the trustee. Second, the employment order did not "specific[ally] and definite[ly]" require Singapore Counsel to conform to any law. The trustee employed Singapore Counsel to domesticate the contempt order issued against Mr. Szanto and to help recover estate property located in Singapore. Singapore Counsel did just that; they did not violate any order of the bankruptcy court.

There are many grounds on which an attorney can be sanctioned for violating applicable law, but a civil contempt citation based on an order approving the attorney's retention is not one of them. Mr. Szanto has failed to identify any specific and definite order that Singapore Counsel violated.

We reject Mr. Szanto's argument that Singapore Counsel unlawfully practiced law in Oregon. Singapore Counsel did not represent a client before the bankruptcy court. *See Or. State Bar v. Smith*, 942 P.2d 793, 800 (Or. App. 1997) (holding that, at minimum, "the 'practice of law' means the exercise of professional judgment in applying legal principles to address **another person's** individualized needs through analysis, advice, or other assistance" (emphasis added)). All of the work of Singapore Counsel was performed in Singapore, before Singapore courts, on matters of

7

Singaporean law. The only arguable "appearance" that Singapore Counsel made in the Oregon bankruptcy court was the application for compensation, but that application was made for the benefit of Singapore Counsel, and not for "another person."[4]

Finally, Mr. Szanto raises a host of other arguments including the bankruptcy judge's abuse of power and personal animosity toward him and a conspiracy to loot his assets and murder him and his wife. These arguments are baseless and do not support any reversible error.

## CONCLUSION

The bankruptcy court did not abuse its discretion in denying Mr. Szanto's Contempt Motion. We AFFIRM.

---

[4] At oral argument, Mr. Szanto speculated that Singapore Counsel might not even be licensed attorneys. This argument is of no moment. It does not matter whether Singapore Counsel is licensed in Oregon because they did not practice law in Oregon. The courts of Singapore, and not the bankruptcy court in Oregon, can and should enforce any applicable Singaporean licensure requirements.